# Exhibit A

## GLOBAL MEDICAL & DENTAL
### Agents for the Henry Schein family of Companies

### CRAIG HOLBROOK
CEO



SINCE 1914

DISTRIBUTION CENTER
2909 Ualena Street
Honolulu, Hawaii 96819
Phone (808) 833-1533
Fax    (808) 833-1338

**SERVING DENTISTS SINCE 1914**


GLOBAL MEDICAL & DENTAL


Sullivan-Schein Dental
A Henry Schein Company

# Exhibit B

# GLOBAL MEDICAL & DENTAL
91-291 Kalaeloa Blvd. Unit C-1, Kapolei, Hawaii 96707

May 22, 2009

**VIA CERTIFIED MAIL / RETURN RECEIPT REQUESTED AND U.S. MAIL**

Dear Chairman Bergman:

Re:     Notice of Multiple Breaches of Contract and Demand for Cure

I write concerning four material breaches by Henry Schein, Inc. (**"HSI"**) of the Exclusive Sales Agent Agreement dated June 3, 2002 (as amended) between HSI and Holbrook Enterprises, LLC *dba* Global Medical & Dental (**"GMD"**). I refer to that agreement herein as the **"GMD-HSI Agreement."** GMD hereby demands that HSI cure the breaches within thirty days of the date of this letter, which cure includes HSI providing GMD with an accounting of unpaid and diverted commissions, in violation of GMD-HSI Agreement. Below, I give the bases for this notice of breach and demand for cure and accounting under GMD-HSI Agreement.

**Breach of Section 2.A. (as per the 2002 Amendment) Concerning GMD's Right to Commissions on Equipment Sales.** HSI's first breach concerns HSI's failure to pay GMD commissions on HSI dental sales of products and equipment sold in the Territory. Territory is defined in Section 3 as consisting of the State of Hawaii. Under Section 2.A of the GMD-HSI Agreement, GMD is entitled to a commission of 40% on *all* equipment products and services sold in the Territory during the term of the GMD-HSI Agreement. Section 2.A. provides: "GMD shall earn a commission equal to 40% of the gross profit dollars, as hereinafter defined, generated from dental sales[.]" "Dental sales" includes any equipment products and services. Other than military sales,[1] any sale of HSI's products equipment or services with the Territory yields a commission for GMD of 40% of the gross profit dollars of such sale. There are no exceptions. HSI has violated Section 2.A. during the entire term of the GMD-HSI Agreement, and HSI continues violate Section 2.A.

I have repeatedly raised non-payment of commissions on equipment with HSI, through its authorized representatives. In November 2008, I exchanged emails with Jack McKay, pointing out that HSI had paid no commissions for equipment GMD sold for HSI. On November 18, 2008, Mr. McKay responded that his spreadsheet did not factor in large equipment or E4D sales in the commission calculation. An error by HSI in setting up its electronic payment system does not avoid HSI's obligation to make the payments required under Section 2.A. of the GMD-HSI Agreement.

For example, GMD has sold and installed 3 e4D CAD/Cam systems in Hawaii with a 4th to be installed in August. GMD introduced the e4D CAD/CAM system at their 5th Annual

---

[1] Military sales are special market sales which, under 2.B. of the GMD-HSI Agreement, are subject to an 8% commission.

Chairman Bergman
Page 2
May 22, 2009

Technology Expo August 21, 2008. This event was begun with a "Thought Leaders Dinner" on CAD/CAM August 20, 2008 which kicked off CAD/CAM for e4D in Hawaii. All of these events were paid for exclusively by GMD. GMD has trained Dental Service Technicians whom have installed, serviced, as well performed preventative maintenance all with no compensation from HSI. The reason for e4D sales in Hawaii are GMD.

In an email dated September 20, 2007 Dave Steck (Vice President & General Manager of HSI Dental) begins the process of trying to shirk the responsibility and change the terms of the agreement by stating the commission rate on e4D would be 30% and that "I promise you will sell some in 2008 and in 2009 it will be one of your biggest growth drivers". He goes on to say "We will have to sell the e4D to the dentist and commission Global". Mr. Steck is somewhat correct in the fact that GMD has sold e4D's in both 2008 and 2009 and that it is a growth driver, but again HSI has neglected to commission GMD at any commission rate let alone a rate below the contracted rate which is unacceptable and contrary to the terms of the agreement.

In an email dated July 31, 2008 John DeMark (e4D Product Manager) requested to "discuss arrangements on e4D sales" I called to discuss and Mr. Demark laid out a commission structure that again would reduce commissions to a mere 15% of Gross Profit. I listened politely as he laid out a plan and had no intention of accepting a reduction in commissions.

I responded immediately to Dave Steck in an email dated July 31, 2008 and recounted his email from September of 2007 where he "guessed" the commission would be around 30%. During this time we again are trying to clear calendars to discuss the acquisition of GMD. Dave Steck again in this email tries to reduce commissions on one of our "growth drivers" to now 15% of gross profit from the contractual 40% of Gross Profit. The definition of gross profit is clearly defined in the Contract and no extraneous expenses mentioned by Mr. Steck or Mr. Demark are included. After the sale of this equipment and emails in November to Jack McCay the issue was also brought up to Brandon Darcangelo e4D Specialist, whom in turn requested payment to both Bill Rotert, e4D Western Regional Manager as well John Demark e4D Product Manager. No payment was made and more hurdles were put in GMD's way by now asking for GMD to submit additional information to receive payment. HSI has all of the information for sales of e4D's in Hawaii and has reported their sales in quarterly conference calls to investors, revenue numbers reported as a public company and as well product category mix as to the growth of CAD/CAM. GMD has paid commissions on all installed e4D's to it's sales team to help keep them motivated to sell this equipment while attempting to correct the situation with HSI.

The four e4D sales made in Hawaii were to:

Dr. Cheung
Dr. Ching
Dr. Sunahara
Dr. Koga

Chairman Bergman
Page 3
May 22, 2009

For the past two years alone, I calculate that HSI owes GMD commissions on equipment totaling at least $120,000. HSI also owes GMD for commissions on sales GMD before that period, which amount can be calculated upon HSI providing GMD with a proper accounting.

Additionally GMD has not been paid commission for dental sales in the Territory including without limitation Ora Pharma, Camlog, and Pentron Alloy.

Section 2.A. has never been amended pursuant to Section 18.

**Breach of Section 2.A. (As per the 2002 Amendment). Concerning GMD's right to commissions on all merchandise and equipment sales.** HSI's agent or associate, Nephron Dental, has physically attended various conventions and dental related activities in Hawaii, and while at those conventions and activities, has sold merchandise and equipment to dentists and dentists' clinics located in the Territory. Any and all sales made by Nephron Dental from and after June, 2002 to current date, in the Territory are subject to the requirement that HSI pay to GMD contractually required commission on all such sales. Additionally allowing Nephron Dental to make any sales in the territory is a breach of Sections 1(a) and 3(a) concerning GMD's exclusive right to sell HSI Products as defined under Section 1(a) of the GMD-HSI Agreement.

**Breach of Sections 1(a) and 3(a) (per the initial agreement with MFH and Mark Heilbron, assigned to GMD) Concerning GMD's Exclusive Right to Sell PMT Products and Services.** HSI's third breach concerns HSI's failure to honor GMD's exclusive right to sell, among other things, HSI's Practice Management Technologies Division's ("PMT") products and services throughout the Territory (as defined in the GMD-HSI Agreement). Section 1(a) of the GMD-HSI Agreement granted GMD the exclusive right to sell PMT products and services which include without limitation Dentrix, Easy Dental, Hi Tech Equipment, Digital Equipment and all upgrades and related services. Section 1(a) provides: "(a) HSI hereby grants to Agent, and Agent hereby accepts from HSI, the exclusive right to sell HSI Products in the Territory (each as hereinafter defined). Notwithstanding anything to the contrary contained herein, the HSI Products, for the purposes of this Agreement, are specifically limited to the products and services manufactured, produced and distributed by HSI's Dental Division. HSI's Practice Management Technologies Division ("PMT") and HSI's dental laboratory subsidiary, Zahn Dental Co., Inc. None of the products and services of HSI's other divisions, subsidiaries and or affiliates are involved in the transactions contemplated under this Agreement."

HSI breached Sections 1(a) and 3(a) by not allowing GMD to sell PMT products, and instead appointing and using other agents to sell PMT products in the Territory,[2] in direct competition with GMD, throughout the term of the GMD-HSI Agreement, negating any exclusive agent status of GMD. HSI has breached Sections 1(a) and 3(a) of the GMD-HSI Agreement materially, in two ways: (i) HSI failed to recognize, honor, and enforce GMD's exclusive right to sell PMT products in the Territory, and (ii) HSI engaged other agents, PDC and Wired for Business, to sell those products in the Territory, diverting that right and revenue to a competitor of GMD.

---

[2] Competing agents, and competitors of GMD, are Personally Designed Computer ("**PDC**") and previously Wired for Business.

Chairman Bergman
Page 4
May 22, 2009

HSI never paid GMD any commissions relating to the sale of PMT products in the Territory. GMD repeatedly objected to its failure to receive any commissions under GMD-HSI Agreement for the sale of PMT products in the Territory, and HSI's diverting those sales to competitors of GMD. These objections were lodged with HSI almost from the onset of the term of the GMD-HSI Agreement (*i.e.*, in 2002). HSI never meaningfully responded to those objections or took any action toward them.[3] To date, GMD has not received any commissions from the sale of any PMT products in the Territory.

Sections 1(a), 3(a) and 2.A. have never been amended pursuant to Section 18.

**Breach of Section 2.A. Concerning GMD's Right to Commissions on ProRepair.** HSI has never paid GMD any monies or commissions on ProRepair. ProRepair consists of services, parts and labor HSI provides the dentists to repair small tools and equipment. GMD has requested, pursuant to the terms of the GMD-HSI Agreement, that an accounting and payment be made to GMD for all services provided under ProRepair, but again HSI has refused to do so.

Section 2.A. has never been amended pursuant to Section 18.

I summarize GMD's demands in paragraphs (a) through (c) below:

**(a) Accounting and Cure of Breach of Section 2.A.** HSI must account for sale of dental equipment that GMD has made for HSI in the Territory since June 2002; and then, under Section 2.A, HSI must pay GMD the Contractual Commission rate on all of those sales, within 30 days from the date of this letter.

**(b) Accounting and Cure for Breach of Sections 2.A., and Sections 1(a), and 3(a).** HSI must account for all sales made by Nephron Dental in the Territory from 2002 to date, and then, under Section 2.A., HSI must pay GMD the Contractual Commission rate on all such Nephron Dental sales made in the Territory, such payment to be made within thirty (30) days from the date of this letter.

---

[3] In Dave Stecks discussion on PMT (Dentrix Software) at the 2008 Schein Dental National Sales Meeting said "The most important product we sell is Dentrix". HSI is well aware of the breach in exclusivity of the PMT agent as well the lack of commissions paid on PMT in Hawaii to GMD. In a review of Dave Stecks business trip to Hawaii September 22-24 2003, his action items notes for PMT/Dentrix follow up action steps:

Dentrix/Meeting

Number 1 Need: PMTS Reimbursement to Global (Dave)

While continuing a trend in how HSI deals with GMD, there was much discussion over the years, ending up with a section reserved for PMT payments on every Commission Report for the Hawaii market generated by HSI through Jack McCay. The problem is there has been no payment for PMT sales in Hawaii.

Chairman Bergman
Page 5
May 22, 2009

**(c) Accounting and Cure of Breach of Section 1(a), 3(a) and 2.A.** HSI must account for all sales of PMT products in the Territory since June 2002; and then, under Section 2.A., HSI must pay GMD the Contractual Commission rate on all such PMT sales, within 30 days from the date of this letter. HSI must repudiate and cancel its appointment of all competing agents in the Territory, including PDC.

**(d) Accounting and Cure of Breach of Section 2.A.** HSI must account for all revenue HSI has earned from ProRepair in connection with the Territory since 2002; and then, under Section 2.A., HSI must pay GMD the Contractual Commission rate on the gross profit of those ProRepair service sales, within 30 days from the date of this letter.

We calculate the above-mentioned breaches to be in excess of $600,000 of owing but unpaid commissions to GMD within 30 days. HSI must make an accounting and explanation to GMD, and its representatives, including producing all records specifically relevant to and explanatory of all HSI revenues earned or received from any and all sales of HSI's products, equipment and services made to customers in the Territory from June 3, 2002 through to the date of this letter, and categorize all such sales by year and product category subsection. Further HSI must pay to GMD within 30 days from the date of this letter, the unpaid but owing commissions on such sales in the Territory.

Sincerely,

Craig Holbrook, CEO
Holbrook Enterprises, LLC
*dba* Global Medical & Dental

cc:     Michael Ettinger, General Counsel (via fax: 516-843-5675)

# Exhibit C



**HENRY SCHEIN®**

Henry Schein, Inc. • 135 Duryea Road • Melville, NY 11747

GENERAL BUSINESS: 1-631-843-5500
FAX: 1-631-843-5680
www.henryschein.com

June 22, 2009

Craig Holbrook, CEO
Global Medical & Dental
91-291 Kalealoa Blvd. Unit C-1
Kapolei, Hawaii, 96707

Dear Mr. Holbrook:

We are writing in response to your letter dated May 22, 2009. You write in regard to certain alleged breaches of the Sales Agent Agreement dated June 3, 2002 between Henry Schein, Inc. and Holbrook Enterprises, LLC d/b/a Global Medical & Dental (referred to as the "First Amendment") as amended by the Second Amendment dated as of October 26, 2005 (the "Second Amendment"). The First and Second Amendments reflect amendments to the Sales Agent Agreement dated April 1, 1996 (the "Original Agreement") assigned to you by MFH Consultants, Inc. in 2002.

I will address each of the alleged breaches you claim to have occurred between May 2002 – May 2009 (the "Relevant Period"), in the order set forth in your letter.

    (a) Dental Equipment Sales; Other Sales

You will note that the First Amendment and Second Amendment reflect the parties' intention to provide for increased commissions on certain eligible products, while giving you the opportunity to purchase equipment directly for resale. On the former products, the commission rate was raised from a blended rate of 10% of Net Sales under the Original Agreement, to first, 31.71% of gross profit under the First Amendment, and later, to 40.00% of gross profit under the Second Amendment. At the same time, equipment sales were carved out of the commission structure, first to provide you with cost-plus ten (10%) percent terms, and then, granting you permission to purchase equipment directly from manufacturers. The purpose for carving equipment out of the commission structure was in recognition of your desire to build an infrastructure to support such sales and permit you to reap the direct benefit of the gross margin on those sales to support additional infrastructure expense. We readily introduced you to our many vendor partners and have eagerly supported your efforts to expand your equipment offering. Accordingly, we believe that amending the Original Agreement and permitting you to source equipment products directly from other sources, relieved us from any obligation to commission you on sales of equipment products. Any commissions paid on such sales are at our discretion.

According to our records Henry Schein made traditional equipment sales totaling $4,058,514 to Global Medical & Dental since May 1, 2002. These have been sold to you at a cost plus arrangement and therefore no commissions are due. In addition, HSI sold $1,398,960 of high technology equipment for which Global Medical & Dental has been

*Products & Services for Healthcare Professionals*



ISO 9002 / EN 46002

paid a commission.  There was $7,307 of lab equipment that was inadvertently omitted from the commission calculation that would have resulted in additional commission due of $673.  The only other equipment sales that have taken place in the Territory are sales of the E4D product.  While we would have preferred to sell these products directly through you, as previously stated above, we are under no obligation to do so.  The very technical nature of the product requires the expertise of a specialized sales force. Notwithstanding the foregoing, we do acknowledge that Global did provide assistance with these transactions.  Accordingly, we are open to discussing a fair compensation arrangement to reflect the contributions of your team, which resulted in a total of $106,793 of gross profit before considering freight costs during the Relevant Period. However, this discussion must reflect the costs incurred directly by Henry Schein in making these sales.

You should note that sales of Camlog product, which we calculate resulted in gross profit of $5,688 during the Relevant Period, are made through our Specialties Group and do not fall within any of the divisions described in Section 1(a) of the Original Agreement. Accordingly, no commission is payable.

Finally, we have determined that Global Medical & Dental did not receive commissions from the sale of certain alloy and porcelain products sold under the Pentron name, as well as certain inadvertently un-commissioned Special Market sales of teeth (note that all other tooth sales have been properly commissioned).  We have identified Pentron sales during the Relevant Period of $461,231, resulting in gross profit of $83,399, which would result in commissions due of $32,300.  The teeth sales during the Relevant Period accumulated to $28,989, resulting in gross profit of $7,048, which would result in commission due of $2,319.

(b) Sales made by Nephron Dental

Nephron Dental operated as a Henry Schein company from 1996 to 2005.  During such time, it was never considered part of HSI's Dental Division as contemplated by the Original Agreement.  Accordingly, it is our position that Global Medical & Dental is not eligible for any commission on gross profit from sales made by Nephron Dental in Hawaii.

(c)  Sales made by PMT Division

You reference a claim for commissions under Section 2A of the First Amendment based on GMD's right to sell *all* products distributed by PMT's division.  Your interpretation of this section is without support.  At the time of execution of the Original Agreement, the PMT division sold a mail order software product called Easy Dental, which did not require a specialized sales force to assist in installation, service and training.  However, two years after the execution of the Original Agreement, in 1998, Henry Schein purchased Dentrix Dental Systems and began to offer these sophisticated software products, which required a specialized sales force to support sales.  In fact, during the six years when MFH served as agent, there was a clear understanding that these types of

products were not HSI Products as defined under the Original Agreement and therefore not treated as commissionable sales. As the assignee of the Original Agreement, you are bound by the parties' interpretation of the Original Agreement and the course of conduct with respect to these products. Notwithstanding the foregoing, it appears that there was an understanding reached between Global Medical & Dental and Henry Schein to compensate you for software sales in the same manner we compensate our Field Sales Consultants. It was our understanding that you were being so compensated, however, a review of our records indicate that during the Relevant Period there is an outstanding amount due of $49,112, based on commissionable gross profit of $545,689 and a commission rate of 9%. This understanding is confirmed by the fact that Global Medical & Dental and Shakail Ahmed, the VAR in the Hawaii territory, have agreed that high-tech equipment sales will be sold through Global Medical & Dental, while all software sales are to be made through Mr. Ahmed's organization.

(d) Sales made by Pro Repair

We have calculated that during the Relevant Period, Pro Repair had sales of $810,901. The commission amount is already reflected in the commission statements and commissions paid to Global Medical & Dental during the Relevant Period.

We have attempted, in good faith, to respond to your request for information concerning past sales of HSI Products and the calculation of commissions due on those sales. Your allegations that Global Medical & Dental is owed more than $600,000 in unpaid commissions is unfounded and without support. While there are certain commissionable sale amounts described above that were inadvertently omitted from the Global Medical & Dental commission calculation, we have determined that this amount totals $35,292, which is being wire transferred to your account concurrent with the delivery of this letter.

Upon confirmation of your understanding of the commission treatment of software products, we will arrange for the delivery of the outstanding payment. Finally, as indicated above, we are open to discussion of a fair resolution on the treatment of D4D sales.

Pursuant to Section 14 of the Original Agreement, you have the right to audit our books and records, at your cost and expense, to confirm the accuracy of the information provided herein.

We welcome the opportunity to meet with you to discuss this issue, as well as discussing how we can make Hawaii a more profitable region for both of us.

Further, we also extend our openness to further exploring an exit strategy for the owners of Global Medical & Dental.

Very truly yours,

Michael S. Ettinger
Senior Vice President &
General Counsel


cc:    Richard Miranda
        Howard Zauberman

# Exhibit D

# GLOBAL MEDICAL & DENTAL
91-291 Kalaeloa Blvd. Unit C-1
Kapolei, Hawaii 96707

June 25, 2009

**VIA FACSIMILE (*631-843-5680*), CERTIFIED MAIL /
RETURN RECEIPT REQUESTED AND U.S. MAIL**

Stanley M. Bergman
Chairman and Chief Executive Officer
Henry Schein, Inc.
135 Duryea Road
Melville, NY 11747

> Re:   Notice of Termination of Agreement for Failure to Cure Multiple
>         Breaches of Contract

Dear Chairman Bergman:

I write to notify you that Holbrook Enterprises, LLC *dba* Global Medical & Dental
("**GMD**") hereby terminates the Exclusive Sales Agent Agreement dated June 3, 2002 (as
amended) between Henry Schein, Inc. ("**HSI**") and GMD (the "**GMD-HSI Agreement**"),
effective immediately (i.e., upon receipt of this letter by HSI).

I detailed HSI's material breaches under the GMD-HSI Agreement in my May 22, 2009
letter (the "**Letter**") to you. In the spirit of good faith, although not required by the GMD-HSI
Agreement, the Letter gave HSI **thirty (30)** days within which to *cure* those material breaches.
HSI has failed to do so, and, as explained below, HSI has confirmed and aggravated those
material breaches. HSI also has not sent GMD the information requested in the Letter on the
unpaid commissions HSI owes GMD. Instead of a cure, HSI has sent a letter from its General
Counsel, Michael S. Ettinger (the "**HSI Letter**"). I briefly respond below to the HSI letter,
which in no way cures HSI's breaches of the GMD-HSI Agreement.

(a)     **Dental Equipment Sales.** The HSI Letter asserts that the parties carved out
certain equipment sales from the GMD-HSI Agreement, including without limitation GMD's
40% commissions on E4Ds and other equipment. No such language exists in the GMD-HSI
Agreement or any of its two amendments. Indeed, the HSI Letter falsely asserts that "[a]ny
commissions paid on such sales are at [HSI's] discretion," not a contractual obligation. HSI, as
drafter of the GMD-HSI Agreement, knew how to exclude commissions for "dental sales."
Section 2A of the First Amendment to the GMD-HSI Agreement, for instance, states "excluding
special markets (DSM) sales" for GMD's commission. Neither the GMD-HSI Agreement nor
any amendment thereto excludes E4Ds and other equipment from the 40% commission that
GMD is owed. The E4Ds and other equipment are not part of any "excluded special market."
The GMD-HSI Agreement requires any amendment to be in writing by both parties, as the
parties did with the two amendments to the GMD-HSI Agreement.

Chairman Bergman
June 25, 2009
Page 2

Instead of HSI paying GMD the 40% commissions on the sale of E4Ds and other equipment in the Territory, HSI through the HSI Letter chooses to aggravate its material breach: HSI seeks to *hold hostage* commissions that HSI concedes that HSI owes GMD, if GMD will agree to a commission rate lower than GMD is promised under the GMD-HSI Agreement. GMD declines to accept less than what GMD is owed under the GMD-HSI Agreement.

   **(b)     Sales by Nephron Dental.**  The HSI Letter attempts to justify HSI's breach of the GMD-HSI Agreement on GMD's exclusive right to sell HSI products in Hawaii, by asserting that Nephron Dental was not part of HSI Dental Division. The HSI Letter perfectly misses the point. Under Section 1 of the GMD-HSI Agreement, never amended, GMD has an "*exclusive right* to sell HSI Products in the Territory." (Emphasis added.) It does not matter whether or not Nephron Dental was part of HSI's Dental Division. HSI allowed another entity to usurp GMD's "exclusive right to sell HSI Products in the Territory." Indeed, HSI *facilitated* that usurpation at GMD's expense. Nephron Dental sold "HSI products in the Territory" in direct competition with GMD. "Exclusive" does not mean "shared." That Nephron Dental was *owned* by HSI and under HSI's control only aggravates HSI's material contractual breach by adding a breach of the duty of good faith and fair dealing, if not fraud.

   **(c)     Sales by PMT Division.**  The HSI Letter attempts to avoid HSI's obligation to pay GMD the commissions on PMT Division products by asserting without substantiation that GMD's assignor, MFH, somehow had an "understanding" that MFH did not have the exclusive right to sell PMT products, nor receive a commission from the same. Logic and the law negate that specious assertion. GMD, as assignee, is not bound by any purported, unmemorialized understanding of the GMD-HSI Agreement, or any purported waiver of the GMD-HSI Agreement. Any change in GMD's commission rights specified under the GMD-HSI Agreement had to be in writing, signed by both parties. There is no amendment of the GMD-HSI Agreement to change GMD's right to commissions from **all** PMT sales in Hawaii, nor to slash GMD's 40% commission rate to 9% (or any other lower commission rate). (That HSI pays its own salespeople a 9% commission, or that HSI added products to PMT after the GMD-HSI Agreement was signed, is irrelevant to what the GMD-HSI Agreement explicitly specifies in a written contract for GMD's commission rate.)

   Since the assignment of the GMD-HSI Agreement to GMD, HSI allowed both Wired For Business and PDC (*i.e.*, Shakil Amed's company) to compete with GMD in the Territory with respect to Henry Schein products. Worse yet, when Wired For Business exited the marketplace in the Territory, HSI choose to replace Wired For Business with PDC, not with GMD, against GMD's strong objections.

   In addition, under Section 19 of the GMD-HSI Agreement, also never amended, "[t]he failure of either party at any time to require performance by the other party of any of the provisions hereof shall not affect in any way such party's right to require full performance at any time thereafter, nor shall the waiver by either party of a breach of any provision hereof be taken or held to be a waiver of any subsequent breach of the same or any other provision hereof." Thus, even assuming that MFH chose not to enforce its contractual exclusivity rights, any such waiver on MFH's part of HSI's earlier breach of the exclusivity provision does not affect GMD's

Chairman Bergman
June 25, 2009
Page 3

right to enforce its exclusivity rights under the GMD-HSI Agreement and hold HSI accountable for violating GMD's exclusivity rights.

Instead of HSI paying GMD what GMD is owed for commissions on the sale of PMT products, HSI chooses to aggravate the material breach: HSI holds hostage $49,112 in commissions that GMD admittedly is owed, and that HSI will pay only if GMD will agree to a commission rate much lower than the 40% specified in the GMD-HSI Agreement.

Moreover, if HSI maintains that it had a further undisclosed "understanding" with MFH, and HSI then did not disclose and manifest that "understanding" to GMD at the time of GMD's assuming the assignment, HSI defrauded GMD at the inception of the contractual relationship, if, in fact, the exclusivity rights to PMT Division products were somehow eliminated before the assignment (although, as explained above, they clearly were not eliminated).

    **(d)**    **Ora Pharma.** The Letter specifically requested sales information concerning Ora Pharma that has been sold extensively in Hawaii, for which GMD has not received any commissions. The HSI Letter completely ignored that request for information on Ora Pharma, and the HSI Letter did not provide any response concerning Ora Pharma.

    **(e)**    **Camlog.** The HSI Letter asks GMD to note that sales of Camlog products are not sold through Henry Schein Dental Division, but instead through HSI's specialty groups. That assertion does not square with reality: Camlog products are extensively advertised and listed in the Schein Dental Division catalogue. Indeed, Camlog is *featured* in a full-page layout on pages 12 and 428 of the 2009 Henry Schein Dental Division catalogue. Again, the HSI Letter advised no commission is payable on a product line that is overtly sold through the Henry Schein Dental Division and marketed in its catalogue.

    **(f)**    **Sales by Pro Repair.** The HSI Letter fails to provide any explanation or information on this issue, despite GMD's clear demand for that information from HSI in the Letter. The reason for HSI's evasion on this issue is transparent: GMD's records and HSI commission statements reveal GMD has never been paid commissions on Pro Repair sales.

    **General Comments.** It is a shame that it took years and the Letter for HSI to acknowledge its "inadvertent omissions"; *i.e.*, to concede multiple breaches of contract. HSI's withholding of amounts clearly owed to GMD as leverage for HSI to cut a better deal for itself under the GMD-HSI Agreement does not reflect "good faith," nor does HSI's starving GMD of those amounts to negotiate a better acquisition price for GMD's assets. HSI acknowledges that it had at least two competing agents (*e.g.*, Nephron Dental, Wire For Business, and/or PDC) selling HSI Products in the Territory, in competition with and instead of GMD, where GMD is HSI's "exclusive agent in the Territory" under the GMD-HSI Agreement. That acknowledgement both admits HSI's breach of contract and confirms HSI's bad faith.

Chairman Bergman
June 25, 2009
Page 4

     HSI has confirmed, but failed to cure and even aggravated, the several material breaches under the GMD-HSI Agreement.  HSI did not meaningfully respond to GMD's request for actual data and information.  The HSI Letter basically proposes that the GMD-HSI Agreement be amended unilaterally to suit HSI's desires and thereby retroactively to "cure" HSI's multiple, material breaches.  The unreasonable positions espoused in the HSI Letter indicate that HSI will not deal with GMD in good faith to resolve the past issues on the great amounts owed, commission rate, and scope of "Henry HSI Products."  GMD therefore cannot expect HSI to act in good faith moving forward.

     HSI's history of not paying commissions it owes GMD, inadvertently, deliberately, and/or by diverting business to competing agents, has eroded GMD's financial position over the years, causing GMD to operate in the red and ultimately forcing GMD to fail.  GMD has rejected HSI's wiring GMD a token $35,000 amount to settle commissions that are a whole order of magnitude greater under the GMD-HSI Agreement.  GMD will not settle a **$600,000+** claim for $35,000, and GMD instead will pursue its meritorious claims against HSI post-termination.

     <u>**GMD therefore hereby terminates the GMD-HSI Agreement effective immediately (i.e., upon receipt of this letter by HSI).  GMD reserves any and all additional rights and claims against HSI that GMD may have under the GMD-HSI Agreement, at law, in equity, or any or all of them.**</u>

                        Sincerely,

                        Craig Holbrook, CEO
                        Holbrook Enterprises, LLC
                        *dba* Global Medical & Dental

cc:    Michael Ettinger
        General Counsel (via fax: 631-843-5680)

# Exhibit E



**PATTERSON**
C O M P A N I E S, I N C.

**Corporate Office**
1031 Mendota Heights Road
Saint Paul, Minnesota 55120
Main (651) 686-1600
Toll Free (800) 328-5536
Fax (651) 686-9331
www.pattersoncompanies.com

BY FAX (631) 843-5680
Original by Courier

June 29, 2009

Mr. Michael S. Ettinger
Vice President & General Counsel
Henry Schein, Inc.
135 Duryea Road
Melville, New York  11747

Dear Mr. Ettinger:

This letter is to demand that certain activities directed at the operations and employees of
Patterson Dental Supply, Inc. in Hawaii immediately cease.

As your business people know, Patterson Dental Supply, Inc. ("Patterson") acquired
certain assets of Holbrook Enterprises, LLC, d/b/a Global Medical & Dental ("Global")

First, we have strong reason to believe that a Schein employee representing herself as a
Global employee, called Hawaii TelComm from her Suffolk County, New York
telephone and requested that all incoming calls to the telephone number at our branch in
Hawaii be forwarded to the Schein Reno call center.   This action by Schein was
fraudulent and tortious behavior.  Hawaii TelComm is now investigating the incident.

In addition, Patterson hired the sales and service force of Global.  These employees have
all signed agreements whereby they have agreed not to work for a competitor of
Patterson.  Your people have nevertheless continued to call these individuals repeatedly,
even after being informed that they do not want any more calls.  Your employee, Dave
Steck, has been asked to cease these telephone calls but has refused.   Mr. Steck's
activities amount to harassment of these individuals and tortious interference with the
relationship between Patterson and its employees.  We demand this activity cease
immediately.

Mr. Michael S. Ettinger
Page 2
June 29, 2009

As Mr. Steck has been informed, all Schein inventory located on Global's premises will be protected and returned to Schein as soon as we have received instructions from Schein where you want it shipped.   In addition, we have taken steps to protect any Schein records and return the same to Schein.

However, the illegal and tortious actions engaged in by Schein must cease immediately. Furthermore, we want your assurance that such activities will cease.  Please be advised that Patterson will pursue all available legal remedies to protect its and its employees' interests.

Sincerely,

Matthew L. Levitt
General Counsel

ML:cjh

# Exhibit F

Henry Schein, Inc.
135 Duryea Road
Melville, NY 11747
631-843-5993

June 28, 2009

**Via E-Mail, Facsimile and Certified Mail**

Craig Holbrook, CEO
Global Medical & Dental
91-291 Kalealoa Blvd. Unit C-1
Kapolei, Hawaii, 96707

**Re:  Your Notice Of Termination Dated June 25, 2009**

Dear Mr. Holbrook:

I write in response to your letter of June 25, 2009, purporting to terminate the Exclusive Sales Agent Agreement, dated April 1, 1996, as twice amended in 2002 and 2005 (the "Agreement"), between Henry Schein, Inc. ("Schein") and Holbrook Enterprises, LLC d/b/a Global Medical & Dental ("Global"), on the ground that Schein has allegedly materially breached that Agreement.

1.      This is to inform you that it is Schein's position that (i) Schein has not breached the Agreement, including, but not limited to, for the reasons stated in my letter to you dated June 22, 2009, (ii) even if Schein had breached the Agreement in any of the respects to which you referred in your notice dated May 22, 2009, which Schein disputes, Schein has either cured or offered to cure such breaches, a cure that you rejected in bad faith, (iii) even if there were any uncured breaches of the Agreement, which Schein disputes, then those breaches are not and were not material breaches of the Agreement in the context of the overall and lengthy business relationship between Schein and Global.

2.      Various consequences flow from Global's voluntary termination of the Agreement, including but not limited to the fact that, under paragraphs 12(a), 12(b) and 13 of the Agreement, Global may not, directly or indirectly, conduct any business that is competitive with any significant part of the business conducted by Schein for a period of twelve months from June 25, 2009.  Please confirm immediately that Global intends to honor that obligation.

3.      In addition, Global agreed in paragraph 11 of the Agreement that it would not at any time divulge, use, or derive any monetary or economic benefit from, or make accessible to any person, any of Schein's trade secrets and/or confidential or proprietary information, including:

> the identity of or lists of customers, customer's needs and requirements, business methods, operational procedures, cost and price information, organizational and/or other business or financial information, or any other information for or incidental to the manufacture, marketing, or promotion of Products, or the business structure or related elements or areas of [Schein's] organization or the organization of any of its affiliated companies (all such information, or any part thereof, the "Confidential Information") . . . .

Please confirm immediately that Global has retained none of Schein's Confidential Information, including, but not limited to, customer lists and information concerning customer's requirements, order history or the like, and that all extant copies of such information shall be immediately delivered to Schein.

Also, please confirm immediately that Global has revealed none of Schein's Confidential Information to any person.

4.     Please provide to Schein immediately any and all information regarding pending or unfilled customer orders, including any standing orders.

5.     Under paragraph 10(f) of the Agreement, Global must return to Schein immediately upon the termination of the Agreement "[a]ny and all books, Customer records, advertising material, samples, and other property which may from time to time be entrusted or delivered to [Global] by [Schein]."  Global is in possession of substantial amounts of personal property that belongs to Schein.  In addition to the material specified in paragraph 10(f) of the Agreement, as well as the inventory discussed in paragraph 6 below, this personal property includes, but is not limited to, the computers and peripheral equipment listed on Annex A.  Please ship all personal property of Schein in Global's possession or control to Schein's warehouse in Reno, Nevada at Global's expense. Please confirm immediately that this has been undertaken, or will be undertaken as promptly as practicable, but in no event later than one week from today, in accordance with paragraph 10(f) of the Agreement.

6.     Global is in possession of a substantial amount of inventory that belongs to Schein.  We believe that there is in excess of $1.1 million worth of such inventory in Global's warehouse.  That inventory is the property of Schein and Global is not authorized to use it for any purpose.  Please confirm immediately that Global is not using that inventory for any purpose.  We will provide you promptly with the name and address of a warehouse in Hawaii to which that inventory should be shipped at Global's expense, in accordance with paragraph 10(f) of the Agreement.

7.     Unless Global agrees immediately that it will comply with its various obligations, including in particular those set forth in Sections 11, 12 and 13 of the Agreement,

respecting Confidentiality and Restrictive Covenants, Schein intends to bring suit to enforce its rights under the Agreement.

This letter is without prejudice to any and all rights, claims, remedies or positions that Schein may have under the Agreement or otherwise, whether at law or in equity, all of which are expressly reserved.

Very truly yours,

/s/ *Michael S. Ettinger*

Michael S. Ettinger
Senior Vice President &
General Counsel


cc:     Richard Miranda
        Howard Zauberman

## ANNEX A

2 Genicom mL450 printers

1 DL350 Server

1 T61 laptop

2-3 T40/T42 laptops

4-5 IP terminals for AS/400

2-3 Zebra printers

1 Okidata printer

7-8 Desktops w/ monitors

2-3 Hp4300 printers